We'll now move to the next case on our calendar, that's Dunn v. Commissioner of Social Security. Ms. Muto, are you there? Yes, Your Honor, I am. Am I pronouncing your name correctly? Yes, Ms. Muto is correct. Muto, okay. Not Muto, Muta. Yes. Okay. And Mr. Peck, are you on the line? Yes, Your Honor, I'm on the line. Great. Oh, there you are. Okay, now I see you, and you can see us and hear us all right? Yes, Your Honor. Good. All right. So, Ms. Muto, you've got two minutes of rebuttal, so that means eight minutes now. You may proceed. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Palmine Muto for Plaintiff Appellant Nicole Dunn. Your Honors, this Court asks us to brief two issues. First, did Ms. Dunn, a pro se litigant who has struggled with chronic health issues and periods of homelessness, receive notice of the nature and consequences of summary judgment? And the answer to the Court's first question is no. Because the District Court considered matters beyond the pleadings in rendering its dismissal of Ms. Dunn's complaint, the Commissioner's motion was necessarily converted into one for summary judgment. At the time the District Court ruled on the motion, Ms. Dunn was pro se, and she was therefore entitled to special solicitude to ensure that she understood the nature and consequences of summary judgment. But this presumes that this was converted into summary judgment. The District Judge didn't say that. This is all based on the fact that there was a reference to a document attached to the declaration of the Commissioner, right? The Court's order, which was a very brief text-only order, did not specify the specific provision, but we believe it was converted to a motion for summary judgment because that declaration, which included voluminous documentation, including notices back and forth from Ms. Dunn, handwritten correspondence from Ms. Dunn, went far beyond the pleadings and also included a lot of information that Ms. Dunn, within the declaration itself, was disputing the accuracy of. The only need to reference that declaration was just to show that the administrative proceeding was ongoing. It may have been a lot of parts of the record, but it was a very limited use of that declaration just to show that there was no final decision, right? No, our position is that in the District Court's very brief order, it appears that the Court was making findings of fact My question to you would be, putting aside the declaration for a moment, although I think you have to address whether or not you can take judicial notice of an administrative proceeding for that purpose, but if you look at the complaint itself, your client attaches a December 2017 letter indicating that she was being given more time to submit evidence, and then on the cover sheet where it's asked her to describe her cause of action, she says, untimely delay. So, my question to you would be, even without looking at the declaration, isn't it apparent from the face of the complaint that she has not exhausted? She checked off a box that says, you know, I'm appealing a final decision, but that's just a conclusion. When you look at the document she attached and her description of her cause of action, I think it's clear from the face of the complaint she didn't exhaust. As an initial point, Your Honor, our position is that there's far more than just that single notice that Ms. Dunn attached to her complaint with respect to the declaration that the Commissioner submitted. But also, Ms. Dunn's submissions that she made to the Court indicate that she was attempting to make these arguments regarding the irreparable harm she was suffering, her declining health, the issues that were going on with respect to the futility of her administrative proceedings that would all go to waiver of the exhaustion requirement. No, but that's a different issue. That doesn't deal with the issue of whether or not the District Judge violated, you know, the rules regarding summary judgment or not. Futility, irreparable harm would be if she had not exhausted, right? So, that's a different issue. There's two issues really in the case. One is whether the District Court improperly considered something outside the record to conclude that she didn't exhaust, and even assuming the District Court did not do that, whether or not there's an exception, right? That's correct. There are two issues. And our position is that the Court would not even need to go past the first issue, that in this instance, because the materials outside the pleadings were considered and the Court necessarily converted to summary judgment, that in that instance, because Ms. Dunn did not receive the requisite notice from the Court or from the Commissioner, as the local rules require, that on that basis alone, remand would be required. Why can't a Court take judicial notice that administrative proceeding is still pending? We've said you can take judicial notice of an SEC filing. We've said you can take judicial notice of an NORB charge. Why would this be any different to take judicial notice that the Social Security Administration did not reach the final decision? With respect to taking judicial notice of all this documentation, we believe this just goes far beyond what our client was required to plead here. And in terms of what our client did plead in her complaint, her notes about untimely delay, although they may not have been praised particularly artfully, spoke to the administrative maze that she has been locked into and the futility of her proceedings before the agency. And so in terms of taking judicial notice of all of that voluminous material, we believe that goes far beyond the kind of documentation that the Court could take judicial notice of. And while those pieces of documentation that he attached, some of those directly dispute the accuracy of what the agency has had before it, and that is part, again, part and parcel of her futility argument that further proceedings before the agency are futile because the documentation is inaccurate. And furthermore, our client was not given the opportunity to muster her own evidence, as she would be entitled to do on summary judgment, to make her arguments with respect to futility and irreparable harm. She didn't have counsel. She was suffering from homelessness at the time. She was in transient housing. She was trying to get medical assistance to demonstrate her medical issues and to demonstrate her declining health, and she wasn't able to do any of those things. Whatever evidence you might have along these lines, aren't they harmless given that the appeals counsel has now ordered review? Your Honor, our client's initial claim for benefits was made five years ago, and my understanding is that that's far longer than the norm, even if our... But all you would be able to grant her would be that her case proceed further, and that might yield her a remand for review. She now has that. What more is she going to get from this court proceeding that she doesn't now have by the appeals counsel having ordered review? We don't believe at this time that any further administrative review, that Ms. Dunn would even be able to meaningfully participate in it. At this point, especially with the issues now with COVID-19, she doesn't have the appropriate technology to meaningfully participate in the administrative review. So what do you think a court can give her? What do you think a court is going to give her? We believe that if this case is remanded to the district court, and we would be willing to represent her on remand, we believe we could put forth evidence of the irreparable harm that she's experienced, the futility of further administrative action, and we can make those arguments. You would be asking the district court to find that she's disabled, on an incomplete record. She wanted to submit more documents, more evidence, medical evidence, other evidence, to support her position, and you're suggesting, in response to Judge Radji's suggestion, that we're not going to go back to the agency, even though they want to have a hearing, to let her supplement and hear more. We're going to ask the district court to do it on an incomplete record. Isn't that what you're asking? No, I mean, we recognize, Your Honor, that the record is very thin right now. And we also recognize that she did not have the opportunity, when the court was reviewing the Commissioner's motion, to put forth the evidence that we believe she could have put forth, had she had the assistance of counsel, and had she also had a notice of the standards that were applied to her. And so, with that assistance, we believe that we can make the requisite showing. Where? Where would you make the showing? With respect to the waiver argument. Where? In the district court? Before the agency? Before the district court. I'm sorry, I can't hear you. What would be the district court's authority to reopen the record and make evidentiary findings itself? We believe that under 405G here, the district court could review or modify agency determinations. And furthermore, we believe that with respect to the material that Ms. Dunn has alluded to in her letters to the court, of course she was never granted her request for oral arguments, which she did make prior to the determination of the district court, in an effort to put forth this information about the harm that she was suffering and the futility of further administrative processes, we believe that on remand, with our assistance, she could make that showing. You reserve two minutes for rebuttal. We will now hear from Mr. Peck. Mr. Peck, you're on mute. Mute, not moot. I'm sorry, I don't do very many Zoom meetings. My name is Jason Peck, and I represent the Commissioner of Social Security in this case. I believe that Judge Raggi hit the nail on the head in that there is no final decision of the Commissioner before this court or the district court. There is no administrative record before this court or the district court. All we really have to know about Ms. Dunn's impairments is a November 2017 administrative law judge decision, which the agency, on Ms. Dunn's request, vacated and sent back to the agency for further fact-finding. In fact, Ms. Dunn had a hearing scheduled in January of 2020, which she continued because she was trying to get counsel. And then we had another hearing scheduled in May of 2020, but SSA's office is closed due to the pandemic, and SSA is conducting only in-person hearings. I'm sorry, that's wrong. SSA is conducting only telephone hearings at this time due to the pandemic. They're trying to balance keeping people safe and due process. And since that time, SSA has conducted about, or at least as of September 3rd, about 180,000 telephone hearings. But Ms. Dunn does not want a telephone hearing, she wants an in-person hearing, so she's refused the agency's overtures in conducting the telephone hearings. How quickly, I don't know what the backlog is, how quickly would she be able to get a hearing at this point? Obviously, when someone is homeless, I don't know whether it's an expedited way of putting them to the front of the line, because there is an issue of irreparable harm, I guess, would be the issue. There is a mechanism by which the agency can use. However, the agency contacted Ms. Dunn yesterday, and Ms. Dunn has indicated that she's in permanent housing and has access to communication. So that would mean that she probably would not be put on the dire need or critical need status. But this is sort of a red herring, if you will, because she's refused any kind of hearing whatsoever other than in-person, and the agency cannot offer that at this time. But if she was to go to a telephone hearing, because she's already been offered one at least once, I don't know where she would stand in line for that, but the agency is trying to. We're in a situation that is sort of unprecedented with the pandemic, so I don't know where she would be in line for that hearing. However, she would be in line, and again, she was offered a hearing in January, which she continued because she wanted to get counsel, which is absolutely her right, and she was offered a telephone hearing in May, which she refused. And she is continuing to refuse that. So the agency is doing everything it possibly can as of this moment to get her a hearing at which she can, according to the Appeals Council remand order, she can present all of the evidence that she wants to support her claim. Because it's interesting that she's asking the district court or this court to find her disabled and order benefits to be paid, if you will, but on the other hand, she's saying, the record is incomplete. I have not submitted all of my medical evidence and all of the evidence of all the other things I say are wrong. So how could any court other than the commissioner make a determination based on an incomplete record, which she admits is incomplete? And again, there's no final decision. My opposing counsel referred to Section 405G. There's no way this can come in under 405G because 405G says there must be a final decision after an administrative hearing, and there must be a record that the commissioner assembles and presents to the court, because courts don't make finding of facts in Social Security cases. Let me ask you a question, Mr. Peck, about the procedural posture. There was a back and forth on this in the briefs, but would you agree with me that because this is not jurisdictional, it's waivable, that this would have to be under 12B6 and not 12B1? Yes, 12B6. That's what the agency position is. So you would have to have a basis then for considering the documents outside the record for purposes of establishing that there wasn't a final decision, right? Correct, and that's when the complainant, pro se or not, fills out the form complaint in the Northern District of New York. As my co-counsel noted and as the court noted, they attest, it's their burden, they attest all administrative proceedings have been completed and that there is a final decision that gets sent into court under 405G. The way to get around that is to prove that under the case of Abbey that there's a collateral claim. In other words, in prior cases, they say, well, Commissioner, your regulations are wrong. And so, yes, I have completed my administrative proceedings, but the regulations don't allow me to do that. That was the New York Times case, I think it was the New York City case. They were talking about ischemic heart conditions and treadmill testing the only determinant of that. In this case, there's no collateral. She is appealing, she is directly appealing, according to her complaint and according to her brief, that we have wrongly denied her benefits. We have denied her nothing. There is no declination. It is still proceeding before the agency. I think, Judge Bianco's question is that the determination that she's failed to exhaust is based on what? It could be based just on the complaint and attachment, which means you wouldn't be going outside of the pleading, or it could be based on other materials that might be acceptable because of judicial notice or something else. What's your theory as to the basis for this 12B-6 dismissal? Because she has not... I may be misunderstanding the question, but she has not... You submitted, the commissioner submitted a boatload of documents, right? Correct. And are those documents that are just judicially noticeable? Or if they're disputed, do we have to have a fact-finding? Most of them are judicially noticeable because they are proceedings before the agency. It would be sort of like if the agency doesn't have PACER, you know, the document filing system for the courts. What the Appeals Council did when they presented that declaration, they said, wait a minute, there's no final decision in this case, so we're going to show you, court, what went on. She's alleged, she's failed her burden in her complaint to show that there's a final decision, and here's what. Here's everything that happened before the agency up until now. It's just presented in document form as opposed to what you see on PACER. You know, the numbers, this was filed this date, this was filed this date. It's ministerial at best. It doesn't go beyond... We don't have a published decision that's exactly including this. I made reference to, you know, an NLRB charge as well as an SEC filing, but we don't have a published opinion by this court that has said that you can take judicial notice of an entire administrative record for the purpose of establishing certain things similar to what you would do for a court. We have plenty of cases that say you can do that for court filings, but unless I missed it, I don't know if you could cite a published opinion where we've said that clearly with respect to administrative record. There's no published case that I know of. However, I think focusing on the term administrative record is a little confusing in terms of agency jargon, if you will, because when we say administrative record under 406B, what we mean is all the medical evidence, the hearing transcript, the ALJ's decision, all of the preliminary documents, you know, noticing the hearings and stuff like that. What was filed in the declaration that was filed with the commissioner's notion to dismiss was just this is what's happened so far, and there's nothing substantive in there. This is a procedural history as opposed to a record, if you will, and this is why the district court should dismiss, which the district court did. Put another way, if this was sent back to the district court, what could the district court possibly use as factual evidence to justify her medical conditions? There is no record. We would have to go by what she says or any records that she would want to submit to the district court, which would have to make some kind of finding of fact, which really isn't the district court's role in reviewing social security decisions. Rather, she should be allowed to proceed to an administrative hearing where she will have the opportunity to submit all of this evidence. The commissioner will have the opportunity to obtain additional evidence if it's warranted. I think the question is this. If a complainant, if someone appealing a social security decision says, I've exhausted, and the commissioner says, no, you haven't, so how does that disputed issue of fact about whether there was exhaustion get resolved? Does it get resolved on the basis of an administrative record that the commissioner attaches to a declaration, or is there some other document that the court can turn to as authoritative with respect to the disputed issue of exhaustion? The specific issue of exhaustion we think is exhausted by that declaration because it's not really an administrative record, again, in terms of factual facts, medical facts and medical opinions and RFCs, which is residual and punctual capacity, or anything like that. It's just a history of what went on. She said, there is a final decision that I'm appealing, and she attached the appeals counsel's granting of the extension of time. I suppose the commissioner could have said nothing, and then just said, you know, she has it attached to a police dismiss, but we don't do that. Every court I've worked in that I can think of, and I've worked in, I think, four circuits and probably 30 different federal issue courts, they usually require something more than just she didn't attach the final decision, so therefore dismiss. We have to submit some kind of declaration. Well, in this case, we have a one-page form complaint with an attachment that makes clear on its face that there hasn't been exhaustion, that there hasn't been a final decision. It's still pending, right? Right. So one could argue, I think Judge Bianco intimated this before, that it's clear from the pleadings that there hasn't been exhaustion, and that's a basis to dismiss under 12b-6. Isn't that the simplest way to do this? That would be the simplest way, but the lower courts sometimes require, or at least they expect declarations from us. So if we're... That's usually because they've checked the box saying they've exhausted, but they didn't put inconsistent documents showing that they didn't exhaust in the same complaint. Usually they just say, you know, there's a final decision. They check the box, and then there would be a need, if you're going to try to show that they didn't, to submit more documents. That's, I think, the difference. But in this case, she did not attach, as required to her form complaint, that final decision. All right. Okay. Thank you very much, Mr. Bianco. I'll hear from Ms. Muto for two minutes, if we will. Two minutes, I think, right? Yes, Your Honor. Thank you. Two minutes. Opposing counsel just confirmed why this matter was decided on summary judgment and not on the motion to dismiss. The question here is not just whether the case is pending for the administration, but also whether one of the exceptions applies. And in this case, Ms. Dunn has argued specifically that further administrative action would be futile and also that she's been irreparably harmed by these delays. And contrary to what opposing counsel has indicated, there's information attached to the prowl declaration that speaks to Ms. Dunn's severe medical issues. Thoroscapular dyskinesis of her shoulder, COPD, chronic obstructive pulmonary disease. She also has had some post-surgical complications. And in addition to the information that's reflected in that voluminous documentation that opposing counsel attached, having met with my client, I know that there's also potentially some unaddressed mental health issues here that with further information and analysis could be put forth in the record. Ms. Dunn did not receive the opportunity to muster forth her evidence before the district court. She wasn't given notice, and she was demonstrating her confusion in all of her filings, which were multiple, including the letters that she made to the court requesting oral argument. There were two of those. She also sought to file a supplemental response where she noted, specifically referenced issues with inaccurate documentation, her medical health issues, issues accessing medical health. And also she sought, after the judge in itself reconsideration, continuing to demonstrate her confusion with what was expected of her and what had occurred before the district court. And, of course, that's because Ms. Dunn was proceeding pro se. She didn't have counsel, and she didn't receive the notice and opportunity that are afforded to pro se litigants in the circuit to ensure that they're protected as vulnerable individuals before the court. And, Your Honor, I can see that my time is up. But I'm welcome to answer any questions. I think I don't think we have any further questions. So thank you both. And Ms. Nudo, thank you. You put this on because we asked you to. And so thank you for doing this. Thank you. Thank you very much. Thank you.